## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division – Detroit

LITTLE CAESAR ENTERPRISES, INC.,
  a Michigan corporation, and

LC TRADEMARKS, INC.,
  a Michigan corporation,

     Plaintiffs,

       v.

DOUGHBOY HOLDINGS, LLC,

  a Michigan limited liability company,

DOUGHGIRL HOLDINGS, LLC,

  a Michigan limited liability company,

DOUGHNORTH HOLDINGS, LLC,

  a Michigan limited liability company,

DOUGHSKEE HOLDINGS, LLC,

  a Michigan limited liability company,

DOUGH HAVEN, LLC,
  a Michigan limited liability company,

TREVOR BUHL,

  a Michigan citizen, and

STEPHANIE BUHL,

  a Michigan citizen,

     Defendants.

Case No. _____

**COMPLAINT**

     Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement. Little Caesar has

terminated its Franchise Agreements with Defendants based on their multiple breaches of those Agreements by failing to operate their franchised restaurants in accordance with Little Caesar's standards, including those related to health, food, safety, sanitization, and product quality and uniformity. Despite the termination, Defendants continue to hold themselves out as LITTLE CAESARS franchisees.

Defendants' continued, unauthorized use and enjoyment of Little Caesar's confidential business system and the LITTLE CAESARS trademarks, trade name, and trade dress breaches the Franchise Agreements and violates the Lanham Act, 15 U.S.C. §§ 1114, *et seq*. Little Caesar seeks injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1.      Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business at 2211 Woodward Avenue in Detroit, Michigan. It is engaged in the business of franchising independent businesspersons to operate LITTLE CAESARS restaurants throughout the United States. Little Caesar's franchisees are licensed to use the LITTLE CAESARS trade name, trademarks, and service marks and to operate under the LITTLE CAESARS System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior

accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.     Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business at 2211 Woodward Avenue in Detroit, Michigan. LC Trademarks, Inc. is the owner of the LITTLE CAESARS trademark, service mark, trade name, and related marks. It licenses those marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to LITTLE CAESARS franchisees.

3.     Defendant Doughboy Holdings, LLC is a Michigan limited liability company. Doughboy owned and operated two LITTLE CAESARS franchises located at 3205 East Colby Street, Whitehall, MI 49461 (Franchise # 1221-0001) and 70 South Adams Street, Newaygo, MI 49337 (Franchise # 1221-0003), pursuant to separate Franchise Agreements.

4.     Defendant Doughgirl Holdings, LLC is a Michigan limited liability company. Doughgirl owned and operated a LITTLE CAESARS franchise located at 7153 West 48th Street, Fremont, MI 49412 (Franchise # 1221-0002), pursuant to a Franchise Agreement.

5.     Defendant Doughnorth Holdings, LLC is a Michigan limited liability company. Doughnorth owned and operated a LITTLE CAESARS franchise located at 485 North Whitehall Road, North Muskegon, MI 49445 (Franchise # 1221-0004), pursuant to a Franchise Agreement.

6.     Defendant Doughskee Holdings, LLC is a Michigan limited liability company. Doughskee owned and operated a LITTLE CAESARS franchise located at 2958 Henry, Muskegon, MI 49441 (Franchise # 1221-0005), pursuant to a Franchise Agreement.

7.     Defendant Dough Haven, LLC is a Michigan limited liability company. Dough Haven owned and operated a LITTLE CAESARS franchise located at 2199 East Apple Avenue, Muskegon, MI 49442 (Franchise # 1221-0006), pursuant to a Franchise Agreement.

8.     Defendant Trevor Buhl is a natural person and a citizen of Michigan. He is a member of Doughboy Holdings, Doughgirl Holdings, Doughnorth Holdings, Doughskee Holdings, and Dough Haven, and personally guaranteed their obligations under the Franchise Agreements pursuant to executed personal guarantees.

9.     Defendant Stephanie Buhl is a natural person and a citizen of Michigan. Stephanie Buhl is also a member of Doughboy Holdings, Doughgirl Holdings, Doughnorth Holdings, Doughskee Holdings, and Dough Haven. She along with Trevor Buhl are those entities' sole members. Stephanie Buhl personally guaranteed the entities' obligations under the Franchise Agreements pursuant to executed personal guarantees.

10.     Defendants are collectively referred to herein as "Doughboy."

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 & 1121; and 28 U.S.C. §§ 1331, 1338, and 1367(a).

12.     This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and the events giving rise to Little Caesar's claims occurred in this district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the venue provision contained in the parties' Franchise Agreements.

## BACKGROUND FACTS

### Little Caesar

14.     Plaintiff Little Caesar Enterprises, Inc. is the franchisor of the LITTLE CAESARS System.

15.     Plaintiff LC Trademarks, Inc. owns numerous federal registrations for the mark "LITTLE CAESARS" and related marks. Among those registrations are Registration Nos. 2036763, 2028607, 2259637, 3904450, 3925216, and others. Each of these registrations is in full force and effect.

16.     Plaintiff Little Caesar Enterprises, Inc. has the exclusive license to use and to license others to use the LITTLE CAESARS marks and trade name and has used them at all times relevant to this action to identify its restaurants and the pizza and other products associated with those restaurants.

17.    The trade dress of LITTLE CAESARS restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms) that are featured at the restaurants operated by LITTLE CAESARS franchisees.

18.    The LITTLE CAESARS trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality and is nonfunctional.

19.    The LITTLE CAESARS trademarks and trade dress are utilized in interstate commerce.

## The Parties' Rights And Obligations Under The Franchise Agreements

20.    Doughboy was formerly licensed to use the LITTLE CAESARS trademarks, trade name, trade dress, and business system in accordance with the terms of its Franchise Agreements with Little Caesar.

21.    Little Caesar provides each of its franchisees with a set of proprietary and confidential manuals and other guidelines (collectively, the "Manuals"), which set forth in detail the procedures, methodology, and standards applicable to the operation of a LITTLE CAESARS restaurant.

22.    Taken together, the Manuals provide detailed and specific guidance and standards regarding the operation of a LITTLE CAESARS franchise.

23.     Among Doughboy's primary obligations under the Franchise Agreements was the obligation to operate its franchised restaurants in accordance with the operational standards, procedures, and specifications prescribed by Little Caesar. Relevant Franchise Agreement provisions in that regard include, but are not limited to, the following:[1]

**5.1.   Importance of Compliance with System Standards**. Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality Little Caesar's operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations. The obligations of Franchisee under this Agreement shall also apply to affiliates and owners of Franchisee.

**5.3.   Conformance to System Standards**. To insure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in any manner which reflects adversely on the Proprietary Marks or the System. Among other things:

---

[1] Because Doughboy's Franchise Agreements were executed in different years, the wording of the provisions and/or the section numbers for the provisions cited in this Complaint may vary between the Franchise Agreements. For ease of reference, the citations contained in this Complaint can be found in Doughboy's most recent Franchise Agreement. In that agreement, Doughboy agreed that its other agreements would be amended, in relevant part, to conform to the provisions in the newer agreement. (Franchise Agreement § 25.2.)

**5.3.1.** Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar's standards and specifications; and shall refrain from using non-conforming items;

**5.3.2.** Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. Franchisee shall sell or offer for sale all products and services required by Little Caesar in the Manuals or otherwise in writing as being part of the System. Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served. Franchisee shall discontinue selling and offering for sale any products or services which Little Caesar disapproves in writing at any time.

**5.3.3.** Franchisee shall purchase and install, at Franchisee's expense, all fixtures, furnishings, equipment, decor, signs, and other items as Little Caesar may direct from time to time in the Manuals or otherwise in writing; and shall refrain from installing or permitting to be installed on or about the Restaurant premises, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Little Caesar's standards and specifications.

**5.5. Maintenance of Restaurant Premises.** Franchisee shall maintain the Restaurant premises and adjacent public areas in a clean, orderly, and excellent condition and in excellent appearance to the public.

….

24.   Doughboy also covenanted to devote its full time and best efforts to the management and operations of its restaurants. (*Id.* § 15.1.)

25.     Under the Franchise Agreements, Doughboy agreed that Little Caesar would conduct, when and as frequently as it deemed appropriate, inspections of Doughboy's franchised restaurants to, among other things, maintain Little Caesar's system standards. (*Id.* § 4.6.)

26.     Doughboy agreed that the failure to comply with the terms of the Franchise Agreements would constitute a default under the Agreements and that Little Caesar had the right to terminate the Agreements if Doughboy failed to cure a default within the time required under the Agreements. (*Id.* § 13.3.)

27.     Doughboy also agreed that Little Caesar had the right to terminate the Agreements with notice and without a right to cure if Doughboy committed three defaults of the same nature during the term of the Franchise Agreements, whether or not those defaults were cured after notice. (*Id.* § 13.2.10.)

28.     Similarly, Doughboy agreed that Little Caesar had the right to terminate the Agreements with notice and without a right to cure if Doughboy willfully or repeatedly failed to meet any requirements or specifications established by Little Caesar with respect to product quality, physical property, condition of equipment or materials used, products manufactured, menu, or the use of products, packaging or promotional materials not specified or approved by Little Caesar, regardless of whether Doughboy received notice of its prior failures or cured them. (*Id.* § 13.2.14.)

29.     Doughboy also agreed that its Franchise Agreements would be subject to termination if it failed to cure, within twenty-four hours of receipt of a written notice to cure, any default which presented a health or safety hazard to employees or customers of its restaurants. (*Id.* § 13.2.20.)

30.     And Doughboy agreed that all of its Franchise Agreements with Little Caesar would be subject to termination if any other Franchise Agreement between Little Caesar and Doughboy, or any affiliate of Doughboy, was terminated. (*Id.* §§ 13.2.21; 13.4.)

31.     Furthermore, under the terms of the Franchise Agreements, Doughboy agreed that its right to use Little Caesar's proprietary marks was limited to uses authorized by the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5.)

32.     It agreed it would use Little Caesar's proprietary marks, including but not limited to Little Caesar's trademarks, trade names, service marks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1.)

33.     And Doughboy agreed that, during the term of the Franchise Agreements and after termination, it would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in Little Caesar's proprietary marks. (*Id.* § 7.2.11.) Doughboy also covenanted not to "do or perform any other act

injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the LITTLE CAESARS System. (*Id.* § 15.2.1.)

### Defendants' Post-Termination Obligations

34.     Doughboy agreed that, in the event that its Franchise Agreements were terminated, it would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold itself out as a present or former franchisee of Little Caesar." (*Id.* § 14.1.)

35.     In addition, it agreed that it would immediately and permanently cease to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the LITTLE CAESARS System and/or proprietary marks. (*Id*. § 14.2.)

36.     It also agreed to return to Little Caesar all of Little Caesar's confidential manuals and other confidential information. (*Id*. § 14.9.)

37.     Doughboy agreed that, upon termination of the Franchise Agreements, it would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id* § 14.5.)

38.     And it agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the LITTLE CAESARS Proprietary Marks,

as the term is defined in the Franchise Agreements, and to furnish evidence of compliance within thirty days after the termination of the Agreements. (*Id.* § 14.3.)

39. Pursuant to the Franchise Agreements, Doughboy agreed that, upon termination, Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of Doughboy's franchised restaurants. In addition, Doughboy agreed to assign to Little Caesar, at Little Caesar's request, any interests Doughboy had in any lease for the restaurant premises. (*Id.* §§ 14.4, 14.10.)

40. Doughboy also agreed to a reasonable post-termination covenant against competition, which states that it may not, directly or indirectly, for itself or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one year following the termination of the Franchise Agreements (or a final court order regarding the same), in any Designated Market Area of any LITTLE CAESARS restaurant, and for a continuous uninterrupted period of two years following the termination of the Franchise Agreements (or a final court order regarding the same), in the Designated Market Area(s) in which its former LITTLE CAESARS restaurants are located. (*Id.*

§ 15.3.) Doughboy further agreed that breaching this or any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury for "which no adequate remedy at law may be available," and "agree[d] to pay all court costs and attorneys' fees incurred by Little Caesar in recovering damages and/or obtaining injunctive or other equitable or legal relief . . . ." (*Id.* § 15.4.)

41.     Doughboy agreed that it would pay to Little Caesar and Little Caesar's affiliates all sums owed, and Little Caesar's costs, expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreements, or the enforcement of Doughboy's post-termination obligations. Doughboy also agreed to pay Little Caesar liquidated damages. (*Id.* §§ 14.6, 14.7, 14.8, 15.4, 23.9.)

42.     Pursuant to the personal guarantees attached as Exhibit A to the Franchise Agreements, Defendants Trevor and Stephanie Buhl agreed to be personally bound by the covenants and obligations of the Franchise Agreements, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

### Defendants' Defaults Under Their Franchise Agreements And The Termination Of The Franchise Agreements

43.     Doughboy has repeatedly failed to operate its restaurants in accordance with Little Caesar's standards for health, safety, and customer satisfaction.

44.    On April 22, 2021, Little Caesar inspected Doughboy's Franchise ## 1221-0001, 1221-0002, and 1221-0003 and found numerous violations of Little Caesar's operational standards, including but not limited to those involving health, food safety, and customer satisfaction. Among other defaults, Little Caesar's representatives observed signs of pest infestation, a failure to mark products and ingredients for expiration, the offering for sale of expired products, the use of unapproved equipment, a failure to offer Little Caesar's core products as required, and other failures to meet brand standards related to product preparation and restaurant cleanliness.

45.    Doughboy received copies of the review forms that Little Caesar completed during the inspections that noted, by category, each violation and also provided comments that further explained many of the violations. Little Caesar then sent Doughboy a Notice of Default and Notice to Cure, dated May 13, 2021, that listed the various health, safety, and critical operational defaults that Little Caesar had observed.

46.    Little Caesar inspected all of the restaurants on November 14, 2022, and again observed numerous violations of Little Caesar's operational standards. Among other defaults, Little Caesar's representatives observed a failure to mark products and ingredients for expiration, the offering for sale of expired products, the use of unapproved products and equipment, a failure to offer Little Caesar's core

products as required, and other failures to meet brand standards related to product preparation and restaurant cleanliness.

47.     Indeed, Doughboy's use of unapproved equipment at one of the restaurants likely led to an occurrence in which a customer of the restaurant reported finding a piece of metal in a pizza purchased at the restaurant. The event was covered by local news outlets.

48.     Doughboy received copies of the review forms completed during the inspections, noting by category each violation and providing comments further explaining many of the violations. Little Caesar again sent Doughboy a Notice of Default and Notice to Cure, this one dated November 16, 2022, that listed the various health, safety, and critical operational defaults that Little Caesar had observed and provided Doughboy with an opportunity to cure its defaults. The Notice advised Doughboy that its Franchise Agreements would be terminated if it failed to cure all defaults in the timeframes established in the Notice.

49.     On January 6, 2023, Little Caesar conducted follow-up inspections of Doughboy's restaurants, and for a third time observed numerous violations of Little Caesar's operational standards. Many of the defaults observed during the previous inspections had not been cured, including but not limited to the failure to mark products and ingredients for expiration, the offering for sale of expired products, the

use of unapproved equipment, and the failure to offer Little Caesar's core products as required. New defaults were also observed.

50.     Because of Doughboy's continuing failure to operate its restaurants in accordance with its Franchise Agreements, Little Caesar sent Doughboy a Notice of Default – its third for Franchise ## 1221-001, -0002, and -0003 – and Franchise Agreement Termination dated February 15, 2023. The Notice terminated Doughboy's Franchise Agreements.

51.     The February 15 Notice demanded that Doughboy cease using Little Caesar's proprietary marks and comply with the Franchise Agreements' post-termination obligations. The Notice also informed Doughboy that Little Caesar would not enforce the termination by itself, but instead would submit the matter to a court for judicial enforcement; however, Little Caesar's decision to do so did not constitute acquiescence of Doughboy's continued use of Little Caesar's marks.

52.     Doughboy has failed to cease operating its franchises and comply with the Franchise Agreements' post-termination obligations.

## COUNT I
## <u>Breach of Contract</u>

53.     The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

55.     These breaches constitute good cause for the termination of the Franchise Agreements.

56.     Doughboy's continued operation of its restaurants constitutes material breaches of the post-termination contractual provisions of the Franchise Agreements cited herein.

57.     As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

58.     The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59.     The use in commerce of Little Caesar's trademarks and trade names by Doughboy outside the scope of the Franchise Agreements and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Doughboy are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes Little Caesar's exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

60.     The acts of Doughboy were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61.     As a direct and proximate result of Doughboy's actions, Little Caesar has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

62.     The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.     The use in commerce of Little Caesar's trademarks, trade names, and trade dress by Doughboy outside the scope of the Franchise Agreements and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of its goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

64.     The acts of Doughboy were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

65.     As a direct and proximate result of Doughboy's actions, Little Caesar has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
## <u>Trade Dress Infringement</u>

66.     The allegations of paragraphs 1 through 65 are hereby incorporated by reference.

67.     Doughboy's restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the LITTLE CAESARS proprietary marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by Little Caesar's licensees.

68.     Doughboy's use of trade dress that is identical or confusingly similar to the LITTLE CAESARS trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Defendants' restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurants with the LITTLE CAESARS restaurants operated by Little Caesar's licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

69.     Doughboy's acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70.     As a result of the Doughboy's actions, Little Caesar has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.     Enter a declaratory judgment holding that Doughboy's conduct violated the terms of the Franchise Agreements and constitutes good cause for the termination of the Franchise Agreements;

B.     Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements;

C.     Enter an order enjoining Doughboy, and all those acting by, through, or in concert with it, by preliminary and permanent injunction, from using the LITTLE CAESARS trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Little Caesar as of the effective date of Little Caesar's Notice of Termination, or as otherwise appropriate by law;

D.     Enter an injunctive order directing Doughboy, and all those acting by, through, or in concert with it, to comply with all applicable post-termination obligations as provided in the Franchise Agreements, including but not limited to promptly paying all sums owed to Little Caesar and its affiliates, complying with the post-termination noncompete, complying with any request from Little Caesar to

purchase any equipment or other assets of the franchises, and taking all steps to transfer its leasehold interests in the franchises to Little Caesar or its designee in the event that Little Caesar elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

E.      Award Little Caesar judgment against Doughboy for the damages Little Caesar has sustained and the profits Doughboy has derived as a result of its trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.      Enter judgment in favor of Little Caesar for the damages it has suffered, including liquidated damages as provided for by the Franchise Agreements, as a result of Doughboy's conduct, plus prejudgment interest allowed by law;

G.      Award Little Caesar its costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H.     Award Little Caesar such other relief in its favor as this Court may deem just and proper.

Respectfully submitted,

/s/Larry J. Saylor
Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
 & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@millercanfield.com
Berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Justin L. Sallis (admitted in E.D. Mich.)
LATHROP GPM LLP
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
Robert.Zisk@Lathropgpm.com
Justin.Sallis@Lathropgpm.com
Samuel.Butler@Lathropgpm.com
*Attorneys for Plaintiffs*